FRANK LEE DICKINSON, TRADING AS FRANK LEE DICKINSON COMPANY, PLAINTIFFS AND PROSECUTORS, v. WILLIAM J. HARBISON AND HENRY W. BAUER, DEFENDANTS.

Argued November 5, 1908—Decided April 30, 1909.

A levy by an execution creditor upon goods sold in bulk by a debtor, in the hands of the purchaser, is a proceeding at law within the meaning of the proviso to section 1 of the act entitled "An act to prohibit sales of merchandise in bulk in fraud of creditors" (*Pamph. L.* 1907, *p.* 570), and if the levy be made within ninety days after the consummation of such sale it will raise the question of the validity of such sale under the statute. Such a sale in bulk

is not *ipso facto* void, but voidable only at the instance of persons who may be injured or aggrieved thereby. Whether or not the statute cited be constitutional, *quære*.

On *certiorari* to Cape May Common Pleas.

Before Justices REED, BERGEN and MINTURN.

For the plaintiffs and prosecutors, *Joseph Beck Tyler*.

For the defendants, *Grey & Archer*.

The opinion of the court was delivered by

REED, J. This writ brings up a verdict of a jury empaneled to try the title to property levied upon by the sheriff of Cape May county. The trial was upon a claim for the property presented by Henry W. Bauer. The goods in question were levied upon under a writ of execution upon a Supreme Court judgment entered in an action brought by Dickinson against Harbison.

The sheriff made his levy upon the goods on August 10th, 1908. It appears that the goods levied upon had been sold by Harbison in bulk to Henry W. Bauer, which sale was consummated on May 30th, 1908.

Dickinson & Company were the creditors of Harbison. After the levy upon the goods as those of Harbison, Bauer, to whom the goods had been sold, filed with the judge of the Court of Common Pleas of Cape May county a claim of property to these chattels. The claim was filed on September 3d, 1908. At the close of the trial a verdict was directed for the claimant.

The question involved arises in construing the act entitled "An act to prohibit sales of merchandise in bulk in fraud of creditors." Section 1 of this act is as follows: "The sale in bulk of the whole or a large part of the stock of merchandise and fixtures, or merchandise or fixtures, otherwise than in the ordinary course of trade, and in the regular and usual prosecution of the seller's business, shall be void as against the

creditors of the seller, unless the purchaser shall, in good faith, and for the purpose of giving the notice herein required, make inquiry of the seller and receive from him a list in writing of the names and places of residence or business of and indebtedness to each and all of such creditors, and unless the purchaser shall, at least five days before the consummation of the sale, give personal notice of said proposed sale to each of the creditors of the seller as appearing on said list, or use reasonable diligence to cause personal notice to be given to them, or shall deposit in the mail a registered letter of notice, postage prepaid, addressed to each of the sellers of said creditors at his post-office address, according to the written information furnished; provided, however, that no proceedings at law or equity shall be brought against the purchaser to invalidate any such voidable sale after the expiration of ninety days from the consummation thereof."

There was evidence in the present case to show that the sale of the property was in bulk, not in the ordinary course of trade; that no inquiry was made of the seller for a list of the vendor's creditors, and no notice was given of the proposed sale to the creditors.

The single point upon which the verdict was directed for the purchaser was that Dickinson & Company, the creditors, took no proceedings in law and equity to invalidate the sale within the ninety days from the time it was consummated. As already remarked, the sale was consummated on May 30th, 1908. The ninety days from the consummation expired August 28th, 1908. The creditor got his levy on his execution against the vendor before the expiration of the ninety days. No other proceeding was taken within the ninety days to invalidate the sale. The claim of property by the vendee was filed after the expiration of the ninety days.

So it appears that there was no action at law or suit in equity against Bauer, the purchaser, brought within the period of limitation provided by the statute.

The statute, however, uses neither the word "action" nor "suit," but the word employed is "proceedings." We think it cannot be doubted that a levy is part of a proceeding in a

cause.  *Smith* v. *Union Bank*, 5 *Pet.* 518; *Mills* v. *Provident Life and Trust Co.*, 100 *Fed. Rep.* 344; *Vanderveer* v. *Conover*, 1 *Harr.* 487; 23 *Am. & Eng. Encycl. L.* 156.

We think the act of the sheriff in levying upon the property sold to Bauer was a proceeding at law.

This was the view taken of a similar provision in the Pennsylvania statute.  *Wilson* v. *Edwards, 32 Pa. Sup. Ct. 295.*

A levy upon this property as being still the property of Harbison, the vendor, was a direct challenge of Bauer's title to it.  It was a challenge not by the mere personal seizure of the goods, but by a seizure by an officer under a legal writ in an action at law.  It was such a seizure as invited an action by Bauer, or a claim of title by him, by which a trial of right of property could be had.

Upon the argument the question was discussed at length whether a sale in violation of the statute was absolutely void, or merely voidable.

The body of the act, as will be observed, declared that a sale should be void as to creditors unless certain things were done by the purchaser.  The proviso, however, speaks of the sale as "such voidable sale."  The word "void" was used in the sense of voidable.  The proviso itself shows that the sale was a nullity only when attacked by creditors within a certain period.

The statutes against fraudulent conveyances generally provide that all conveyances shall be void, but these words in that connection are construed to mean voidable only at the instance of persons who may be injured or aggrieved thereby.  14 *Am. & Eng. Encycl. L.* 280; 29 *Id.* 1068.

But when a legal title to property is once vested in a debtor the law does not consider him, as far as his creditors are concerned, to have been divested of it by a conveyance which is fraudulent as against them.  If any creditor's claim has been reduced to judgments he may levy his execution upon the property and subject it to sale for the satisfaction of his debt.  14 *Encycl. L.* 311; *Mulford* v. *Tunis*, 6 *Vroom* 256; *Brockhurst* v. *Cox*, 1 *Buch.* 703.

In the present case, while the sale was voidable at the instance of creditors, yet the creditor could get his judgment and levy his execution upon the property sold within the time limited by the statute, and acquire a position to attack or to resist an attack of a vendee. A sale under the execution would pass the title to the purchaser.

We are of the opinion that the direction of the verdict should be reversed.

It may be observed that the statute in this case is similar to a New York act prohibiting sales in bulk, which act was held to be unconstitutional in *Wright* v. *Hart,* 182 *N. Y.* 330. The same result was reached respecting similar statutes in *McKinster* v. *Sager,* 163 *Ind.* 671; *Sellers* v. *Hayes,* 163 *Id.* 422; *Miller* v. *Cranford,* 70 *Ohio St.* 207; *Black* v. *Schwartz,* 27 *Utah* 387.

On the other hand, similar acts have been held to be constitutional in *Squier* v. *Tellier,* 185 *Mass.* 18; *Walp* v. *Mooar,* 76 *Conn.* 515; *Neas* v. *Borches,* 109 *Tenn.* 398.

See, also, note to *Block* v. *Schwartz,* reported in 1 *Am. & Eng.* cases annotated.

No point was made respecting the constitutionality of the act in the argument in this case, and so it has not been considered.

Judgment is reversed.