### In re LIPMAN.

(District Court, D. New Jersey. December 21, 1912.)

1. BANKRUPTCY (§ 116*)—BANKRUPT ACT—COLLECTION OF ASSETS—STATUTES—CONSTRUCTION.

Bankruptcy Act July 1, 1898, c. 541, § 23b, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3431), limiting the jurisdiction of the bankruptcy court over controversies relating to the collection, etc., of bankrupts' estates referred to in section 2, cl. 7, relates only to suits brought by the trustee, and does not restrict the right of receivers or trustees to maintain or defend their possession of goods seized as those of the bankrupt in the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

**2. BANKRUPTCY (§ 293*)—COURTS—ANCILLARY JURISDICTION.**

Ancillary jurisdiction in bankruptcy is exercised to aid the court of primary jurisdiction to collect the estates of bankrupts and to distribute them among those entitled thereto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. § 293.*]

**3. BANKRUPTCY (§ 116*)—BANKRUPTCY COURT—JURISDICTION—ANCILLARY PROCEEDINGS—TITLE TO PROPERTY SEIZED—DETERMINATION.**

Where property alleged to have been conveyed by a bankrupt in fraud of creditors was yielded by the buyer to an ancillary receiver, whether willingly or unwillingly, it thereby came into the possession of the court exercising ancillary jurisdiction in bankruptcy, which acquired jurisdiction to determine the rights of the buyer and grant complete relief.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

**4. COURTS (§ 37*)—JURISDICTION—DENIAL—ESTOPPEL.**

Where an ancillary receiver of a bankrupt obtained possession of goods alleged to have been fraudulently transferred by the bankrupt, the buyer, by petitioning the court for a discovery from the receiver of his right to take the goods, and for the return thereof to her, estopped herself to challenge the court's jurisdiction over her person, even though such jurisdiction depended on her consent or acquiescence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–151; Dec. Dig. § 37.*]

**5. BANKRUPTCY (§ 184*)—"SALES IN BULK"—STATUTES.**

The bankrupt's main business was wholesaling merchandise in Philadelphia, but he also carried on a single retail business in a town in New Jersey. Such stock embraced all the property that the bankrupt had in New Jersey and all that he had in the retail business anywhere. Within four months prior to bankruptcy he sold the entire stock in bulk to his sister, without making any attempt to comply with 2 N. J. Comp. St. 1910, p. 2622, regulating sales in bulk. *Held*, that such transfer was a "bulk sale" within the act, though not a transfer of the bankrupt's main business, and, though not ipso facto void, was voidable at the instance of creditors injured or affected thereby.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

**6. BANKRUPTCY (§ 178*)—TRANSFERS—FRAUD—SALE IN BULK.**

Facts attending a sale of a retail business owned by a bankrupt to his sister within four months prior to bankruptcy, without any attempt to comply with 2 N. J. Comp. St. 1910, p. 2622, regulating sales in bulk, *held* to sustain a finding that it was fraudulent as to creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264–274, 283, 284; Dec. Dig. § 178.*]

In Bankruptcy. In the matter of bankruptcy proceedings against Abe Lipman. On petition of Annie Solotist for an order requiring an ancillary receiver to surrender certain goods, wares, and merchandise purchased by her from the bankrupt, or that she be permitted to commence an action against such receiver to replevin the same. The petition having been referred to a master who reported in favor of dismissal thereof, petitioner brings exceptions. Overruled.

John H. Backes, of Trenton, N. J., for exceptant.
Bertram D. Rearick, of Philadelphia, Pa., opposed.

RELLSTAB, District Judge. On November 2, 1911, a petition in bankruptcy was filed against Abe Lipman, in the United States District Court for the Eastern District of Pennsylvania. On November 8th that court appointed Herman O. Hark receiver of said estate; and on December 11th, this court, on the petition of such receiver, appointed John G. Hughes "ancillary receiver to take charge of the assets of the above-named alleged bankrupt within the jurisdiction of this court and to preserve and dispose of the same as this court may hereafter order."

In his petition seeking such appointment, the receiver alleged, inter alia, that Lipman, a few days prior to the filing of the petition in bankruptcy, being the owner of a certain store at Pleasantville in this district, where he was conducting business in the name of the United Cut Price Dry Goods Stores Company, transferred the same to his sister, Mrs. A. Solotist, but that he still continued to exercise control over it; that he (the receiver) expected to prove that such transfer was intended to defraud the creditors of the bankrupt; that the contents of such store, consisting of fixtures, dry goods, and notions of the probable value of $4,000, were about to be sold by said bankrupt; and that it was absolutely necessary for the preservation of such assets for the benefit of such creditors that an ancillary receiver be appointed.

On December 15th, said Annie Solotist presented a petition to this court, alleging, inter alia, that she was a resident of New Jersey and the owner of said store and the stock of merchandise, having purchased them from the bankrupt on October 20, 1911, for the sum of $4,000; that the said ancillary receiver had taken it out of her possession without authority in law, but under the color of his office; that such conduct was illegal, and prevented her from carrying on her lawful occupation; that she purchased said merchandise in good faith for her own use, without being aware that said bankrupt was in financial difficulty, and in no wise to defraud his creditors; that said bankrupt in no wise exercised ownership or control of said merchandise or business; and that she controlled and managed the same for her own use. Her prayers are:

"That the said John G. Hughes, ancillary receiver, may discover by what right he has taken into his possession goods, wares, and merchandise of your petitioner, and of the premises wherein the same are contained; that the said ancillary receiver may be ordered to surrender the same to your petitioner; or that your petitioner have leave to commence her action against the said ancillary receiver to replevin the same."

In the answer to Mrs. Solotist's petition, filed December 18, 1911, the ancillary receiver, in addition to putting in issue many of the allegations of the petition, in substance, alleged that on the date he took possession (December 12th) he found such petitioner and the bankrupt in possession; that, upon notifying them of his appointment as ancillary receiver and his demand for possession, they withdrew from the said store and surrendered possession thereof to him.

Upon a reference of the issues raised by such petition and answer, and the taking of considerable testimony, the special master found that such transfer was made with intent to defraud creditors, and that the petitioner was not a purchaser in good faith for a present

fair consideration, and recommended that the petition be dismissed. To this report Annie Solotist, the petitioner, has filed a number of exceptions, which may be summarized under two heads: First, want of jurisdiction of the court of bankruptcy to try the title of the property; and, second, that the transfer of such property was bona fide, and vested a good title in such exceptant.

As to lack of jurisdiction: The exceptant insists that she is an adverse claimant in possession and not subject to the summary jurisdiction of the bankruptcy court. By the Bankruptcy Act, § 2 (as amended by Act June 25, 1910, c. 412, §§ 1, 2, 36 Stat. 838, 839 [U. S. Comp. St. Supp. 1911, p. 1491]), the bankruptcy courts are empowered to (clause 3) appoint receivers to take charge of the property of bankrupts whenever absolutely necessary for its preservation; (clause 6) bring in additional persons in the bankruptcy proceedings when necessary for the complete determination of a matter in controversy; (clause 7) cause such estates to be collected and determine controversies in relation thereto, except as by the act otherwise provided; (clause 15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act; and (clause 20) exercise ancillary jurisdiction over persons or property within their respective territorial limits in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy.

[1] Section 23b of the act invoked to sustain exceptant's contention, and which limits to some extent the jurisdiction of the bankruptcy court over controversies relating to the collection, etc., of estates of bankrupts referred to in section 2, cl. 7, of the act, *relates only to suits brought by the trustees,* and has no restrictive effect on the right of receivers (or trustees for that matter) to maintain or defend their possession of goods seized as those of the bankrupt. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327.

[2] Ancillary jurisdiction is exercised for the purpose of aiding the court of primary jurisdiction to collect the estates of bankrupts and distribute them among those entitled thereto. The following of property transferred within four months of the institution of bankruptcy proceedings in such circumstances as suggest the probability of an effort to defraud creditors, and the taking charge of it though in the possession of third parties claiming title thereto, when it may be done peaceably, or failing that, to insure by proper restraining order, its production when wanted, is necessary if the beneficent purposes of the bankruptcy act are to be achieved.

[3] When such property is obtained, whether willingly or reluctantly yielded, it is in the possession of the court exercising such ancillary jurisdiction, and that court, by its very possession, draws to itself the power to determine the interests therein of all parties making claim thereto, and it becomes its duty to so determine and grant

complete relief, that further litigation in regard thereto may be avoided. Fidelity Trust Co. v. Gaskell (C. C. A.) 195 Fed. 865; In re Rochford, 124 Fed. 182, 59 C. C. A. 388; In re Leeds Woolen Mills (D. C.) 129 Fed. 922; In re Moody (D. C.) 131 Fed. 525.

[4] Whether the goods were in the possession of the bankrupt or the petitioner at the time they were taken by the ancillary receiver, and whether they were voluntarily surrendered, or were forceably taken by the receiver (not raised by her petition), are disputed questions of fact that need not be decided. The court having undoubted jurisdiction of the subject-matter of the controversy, it follows that by petitioning this court for a discovery from the receiver of his right to take such goods, and for the return thereof to her, the petitioner is estopped from challenging the court's jurisdiction over her person, even if its jurisdiction in that respect depended upon her consent or acquiescence.

As to the bona fides of such transaction: This involves the application of the test contained in section 67e of the Bankruptcy Act and the state laws adopted by it. This section nullifies all conveyances of any part of the bankrupt's property made within four months of the filing of the petition in bankruptcy with the intent to hinder, delay, or defraud any of his creditors "except as to purchasers in good faith and for a present fair consideration." It also nullifies all conveyances made by him within the same period while insolvent, which under the state laws are null and void, as against his creditors.

[5] The act of New Jersey entitled "An act to prohibit sales of merchandise in bulk in fraud of creditors" (P. L. 1907, p. 570; 2 Comp. St. N. J. p. 2622), thus brought into operation by such section, declares:

"Sec. 1. The sale in bulk of the whole or a large part of the stock of merchandise and fixtures, or merchandise or fixtures, otherwise than in the ordinary course of trade, and in the regular and usual prosecution of the seller's business, shall be void as against the creditors of the seller, unless the purchaser shall, in good faith and for the purpose of giving the notice herein required, make inquiry of the seller and receive from him a list in writing of the names and places of residence or business of and indebtedness to each and all of such creditors, and unless the purchaser shall, at least five days before the consummation of the sale, give personal notice of said proposed sale to each of the creditors of the seller as appearing on said list, or use reasonable diligence to cause personal notice to be given to them, or shall deposit in the mail a registered letter of notice, postage prepaid, addressed to each of the seller's said creditors at his post office address, according to the written information furnished; provided, however, that no proceedings at law or equity shall be brought against the purchaser to invalidate any such voidable sale after the expiration of ninety days from the consummation thereof."

The petitioner admits that she did not make the inquiries or give the notices to the creditors of the seller, required by the New Jersey act. It is contended, however, on the part of the petitioner, that as the bankrupt's main business, which he carried on in Philadelphia, was wholesale, while that carried on by him at Pleasantville was retail, and as such sale embraced only his retail business, such transfer was not a "bulk sale" within the meaning of such act; that "the statute condemns bulk sales only when the bulk sale involves the business en-

terprise or plant of the vendor, and does not relate to instances where only a part of one's business is sold in bulk." The statute, however, in terms, provides otherwise. It comprehends sales of "a large part of the stock * * * otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business."

The stock of merchandise in the Pleasantville store embraced all that the bankrupt had in this state, and all that he had in the retail business anywhere. The entire stock in such store was sold in bulk, and the sale was obviously not in the ordinary course of the bankrupt's trade or business. This sale, while not ipso facto void, was voidable at the instance of the creditors injured or affected thereby. Dickinson v. Harbison, 78 N. J. Law, 97, 72 Atl. 941.

[6] The circumstances attending the transfer of this store show a purpose on the part of both the bankrupt and his sister, the petitioner, to defraud his creditors. The finding of the master that this transfer of the store by the bankrupt to his sister, Mrs. Solotist, was but a pretense and with intent and purpose on the part of the bankrupt to hinder, delay and defraud his creditors, and that Mrs. Solotist was not a purchaser in good faith and for a present fair consideration, is fully justified by the evidence in this case. The execution of the bill of sale and the notes representing a part of the consideration, and of the mortgage to secure such notes, the obtaining and depositing of the moneys to pay such consideration, the giving of the check to meet the cash payment required in such sale, the subsequent purchase of such notes from a third party to whom the bankrupt had transferred them, and the giving and cashing of checks therefor, relied upon as indications of a bona fide sale, are, in the light shed thereon by unimpeached and credible testimony, but the means selected by these fraud doers to carry out their fraudulent scheme.

The transfer of the merchandise in the Pleasantville store was contrived and consummated in fraud of the bankrupt's creditors, and is within the inhibition of section 67e of the bankruptcy act, and is void as against such creditors.

The exceptions to the master's findings are overruled, and the petition is dismissed, with costs to be taxed.