### In re CLAYTON.

#### (District Court, D. New Jersey. July 26, 1919.)

1. BANKRUPTCY ☞212—JURISDICTION OF BANKRUPTCY COURT.
   A trustee is not required to resort to a plenary suit to establish his right to property which has come into his possession, but may defend it when challenged in the bankruptcy proceedings.
2. BANKRUPTCY ☞184(1)—FRAUDULENT CONVEYANCES ☞47—PROPERTY PASSING TO TRUSTEE—FRAUDULENT SALE BY BANKRUPT.
   New Jersey Bulk Sales Act (P. L. 1907, p. 570; 2 Comp. St. N. J. 1910, p. 2622) is constitutional, and a sale in violation of its provisions is void as against the trustee in bankruptcy of the seller appointed in proceedings instituted within 90 days after the sale.

In Bankruptcy. In the matter of Frank F. Clayton, bankrupt. On review of referee's order, denying claim of Samuel A. Reeves to property in hands of trustee. Affirmed.

David Bobker, of Newark, N. J., for claimant.
James D. Carton, of Asbury Park, N. J., for trustee.

RELLSTAB, District Judge. Samuel A. Reeves, claiming under a bill of sale made to him by Frank F. Clayton before the latter was put into bankruptcy, presented to the referee his petition, praying that the trustee be directed to turn over to him the property mentioned in the bill of sale. The referee denied Reeves' claim, and he is here alleging that the referee's determination in that respect is erroneous. The reasons assigned for reversal are:

"(a) The findings are contrary to the weight of the evidence.
"(b) The findings are contrary to the provisions of law applying to and affecting the situation raised by the petition and answer.
"(c) The referee should have directed the trustee to proceed in a plenary suit, and he had no jurisdiction or authority to determine the findings as set forth in the annexed order."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the year 1917, Clayton was the proprietor of a summer resort known as River Crest Inn, which he held under a lease with an option to purchase. During the years 1916 and 1917, Reeves had loaned him moneys from time to time. Those of the year 1917, amounting to about $5,000, were to assist him in fitting up and carrying on the Inn. He (in popular language) was Clayton's financial backer. The inn was not a financial success. Clayton's failure to make a substantial payment in August on account of such indebtedness, as he had agreed, caused Reeves to become very insistent in his demands for a settlement. The result was the execution by Clayton to Reeves, on October 27, 1917, of an assignment of the lease for the inn, and a bill of sale covering practically all his personal property other than liquors and foodstuffs contained therein. The consideration for these transfers was the $5,000 existing indebtedness referred to and an additional $1,-000 then advanced by Reeves. Both bill of sale and assignment of lease were promptly recorded in the county clerk's office of the county where the inn is located, and the insurance policy covering such personal property was transferred to Reeves' name. None of the property was removed from the inn, and Clayton, with Reeves' consent, ran the inn for the remainder of the season free of rent. From the date of the transfers until about the middle of November, 1917, Clayton bought and sold liquors and foodstuffs at the inn as theretofore.

An involuntary petition in bankruptcy was filed against Clayton on the 30th of that month. When the receiver appointed in these proceedings went to the inn on February 19, 1918, he found it unoccupied, the back door unlocked and partly open, and some of the windows unfastened. He took possession of the property and subsequently turned it over to the trustee. The property claimed by Reeves is included in the property thus turned over.

[1] As to the need of a plenary suit by the trustee: It is sufficient to say that the trustee's possession of the property made it unnecessary for him to institute a suit for its recovery and entitled him to maintain and defend his right thereto when such right was challenged by Reeves. In re Lipman (D. C. N. J.) 201 Fed. 169 (and cases cited page 172), 29 Am. Bankr. Rep. 139.

[2] Under the remaining two reasons assigned as grounds for reversing the referee's findings, neither of which is specific enough to have successfully withstood a challenge, if made, counsel for Reeves has argued, contrary to the referee's findings, that the transfer of the goods was not within the statute entitled "An act to prohibit sales of merchandise in bulk in fraud of creditors" (N. J. P. L. 1907, p. 570; 2 Comp. Stat. N. J. p. 2622), or, if within that enactment, that the act was unconstitutional, and that Reeves did not have reasonable cause to believe that the effect of such bill of sale would be to give him a preference.

The New Jersey Bulk Sales Act is constitutional. Lemieux v. Young, 211 U. S. 489, 29 Sup. Ct. 174, 53 L. Ed. 295; Kidd, Dater Co. v. Musselman Grocer Co., 217 U. S. 461, 30 Sup. Ct. 606, 54 L. Ed. 839; Kett v. Masker, 86 N. J. Law, 97, 90 Atl. 243. The pertinent section of the act is set out in Re Lipman, supra, 201 Fed. 173, 29 Am.

Bankr. Rep. 139. A reference thereto will show that transfers of the kind here in question—sales of "a large part of the stock of merchandise * * * otherwise than in the ordinary course of trade, and in the regular and usual prosecution of the seller's business"—are clearly within the purpose and terms of that act. As Reeves did not seek and ascertain the names of Clayton's existing creditors, nor give those known to him to be such the notice of such intended sale, as required by this statute, the transfer to Reeves by the very terms of the act was void ab initio. Kett v. Masker, supra. That no creditor brought proceedings to invalidate such transfer within the 90 days specified by the act, does not revitalize the transfer. The filing of the petition in bankruptcy, within the 90 days referred to, created a situation not controlled nor contemplated by the New Jersey statute. In re McAusland (D. C.) 235 Fed. 173, 189, 37 Am. Bankr. Rep. 519. The title to the property covered by this bill of sale passed to the trustee in bankruptcy free from such void transfer, and as he was in possession no suit to avoid it was necessary.

While Reeves' failure to comply with the requirements of the New Jersey Bulk Sales Act is sufficient to sustain the referee's findings, it is proper to add that the referee's further finding that Clayton was insolvent at the time he gave Reeves the bill of sale in question, and that Reeves had reasonable cause at that time to believe that its effect would be to give a preference, which is voidable under section 60b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [Comp. St. § 9644]), is amply sustained by the evidence, which fully meets the test laid down by this court in Heyman v. Third Nat. Bank of Jersey City (D. C.) 216 Fed. 685.

The referee's decree is affirmed, with costs.