(83 App. Div. 197.)

# WHITELEY v. TERRY.

(Supreme Court, Appellate Division, First Department.　May 8, 1903.)

1. REAL ESTATE COMMISSIONS—RIGHT TO RECOVER—EVIDENCE.
    Where, in an action by the assignee of a broker to recover commissions for the sale of real estate, plaintiff's assignor testified that he was acting for a purchaser when he approached defendant, and that, on the failure of these negotiations, he mentioned other prospective purchasers, but told defendant that they were his customers, and it was shown that plaintiff's assignor carried on no negotiations with the party who purchased the property, and did not meet this party until a week after the sale, it was error to submit the case to the jury.

2. CONSTITUTIONAL LAW—PROPERTY RIGHTS — POLICE POWER—REAL ESTATE BROKERS.
    Pen. Code, § 640d (Laws 1901, p. 312, c. 128), providing that, in cities of the first or second class, any person offering for sale real property without written authority shall be guilty of a misdemeanor, does not infringe any property rights, and is a reasonable exercise of the police power of the state.

Appeal from Special Term, New York County.

Action by John W. Whiteley against Seth S. Terry to recover broker's commissions. From an order setting aside a verdict for plaintiff and granting a new trial (78 N. Y. Supp. 911), plaintiff appeals.　Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

C. W. Coleman, for appellant.
John L. Hill, for respondent.

PATTERSON, J.　The plaintiff sues, as the assignee of one Anspacher, to recover commissions claimed to have been earned by his assignor, as a real estate broker, upon the employment of the defendant.　The allegations of the complaint are that the employment was made, and that Anspacher procured a purchaser for the property. The answer of the defendant denies generally these allegations, and sets up as an affirmative defense that he never gave a written authority to Anspacher to sell the real property, as required by chapter 128, p. 312, of the Laws of the State of New York, enacted in 1901 (section 640d, Pen. Code).　The cause came on for trial, and the plaintiff had a verdict, after which a motion was made for a new trial, which was granted; the order of the court being "that the verdict herein in favor of the plaintiff be, and hereby is, set aside, as being contrary to law, and a new trial granted."

The trial judge appears to have granted this motion on the ground that the plaintiff was not entitled to recover, because of the provision of the act of 1901 (section 640d, Pen. Code).　But irrespective of that enactment, the verdict was contrary to law, and the complaint should have been dismissed upon the motion made when the plaintiff rested, and which was renewed at the close of the whole proofs. There was no evidence that the defendant employed Anspacher to sell the property, nor was there evidence that he was the procuring cause of the sale.　Anspacher's own testimony disposes of the first proposi-

tion. He admits that he, by letter dated January 16, 1902, introduced himself to the defendant, and made a proposition with respect to a sale of the property, with a building loan. He testifies that at that time he was acting for Mr. Wandell, of Buffalo. At that point he does not claim to have been acting for, or to have been employed by, the defendant. Mr. Wandell seems to have dropped out of the transaction, as Mr. Terry would not make the building loan. The plaintiff's assignor then testified that he told Terry that a broker had brought to him a party who thought of buying the lot, to which Mr. Terry replied that, if the party were "all right," he was perfectly satisfied to sell it upon certain terms. The party, the plaintiff's assignor says, was John W. Stevens, or the John W. Stevens Building Company; but he also testifies he told Terry that Stevens, or the Stevens Company, was his (Anspacher's) customer. Anspacher then seems to have had a talk with a Mr. Hellman about a sale of the property, but the proof does not show either that Terry employed Anspacher to make a sale, or that Hellman was authorized by Terry to employ him. There is nothing in the evidence which justifies the conclusion that Terry, either personally or through Hellman, employed the plaintiff's assignor, or that the defendant had reason to believe otherwise than that Anspacher was acting for other customers. Nor does it appear that Anspacher procured the sale to be made. The proof shows, on the contrary, that he did not. The sale was effected by one Hilton, who never heard of Anspacher in the transaction. Mr. Finn, the purchaser, never met Anspacher until a week before the execution of his contract with Terry. The submission of the case to the jury under such circumstances, was error in law. The question as to whether there is evidence to support a finding is one of law. Healy v. Clark, 120 N. Y. 642, 24 N. E. 316.

If the above considerations are correct, then this order must be affirmed, without regard to the question of the constitutionality of the act of 1901. In the Second Department, in Grossman v. Caminez, 79 App. Div. 15, 79 N. Y. Supp. 900, it has been decided that the law is unconstitutional. The opinion of the court proceeds upon two grounds, viz., that the act is invalid because of the discrimination made between persons engaged in a legitimate business in different communities in the state, making it unlawful to engage in that business in cities of the first and second classes, unless under certain conditions, while it remains lawful to do so in other parts of the state without such conditions, and that it interferes unreasonably with the liberty of the citizen. The learned court says that it has been unable to find any case which holds that the Legislature can make an act innocent and harmless in itself—a necessary or commonly used instrumentality of carrying on the ordinary vocations of life—a crime in one portion of the state, and not in another. But that is exactly what was held in the Havnor Case, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707. By the act of 1895, p. 649, c. 823, it was made a misdemeanor for any person to work at the trade of a barber on Sunday, except in the city of New York and at Saratoga Springs, where business might be carried on until 1 o'clock in the afternoon of Sunday, and that was held to be a valid exercise of police legislation, and worked no deprivation of liberty or property,

within the meaning of the Constitution. Criminal laws are not neces-
sarily unconstitutional if they bear unequally upon persons in different
parts of the state. The same offense punishable under a general law
may be differently punished in different parts of the state. Williams
v. People, 24 N. Y. 405; Matter of Bayard, 25 Hun, 546.

We have no criticisms to make upon the general views expressed
in the opinion of the court in the Grossman Case with respect to
the police power, its extent, its purpose, or its circumscriptions; but
that the Legislature may control and regulate, for the benefit of the
public, methods by which business shall be transacted, cannot be dis-
puted. It is within its legitimate power to regulate charges for ele-
vating grain. People v. Budd, 117 N. Y. 1, 22 N. E. 670, 682, 5 L. R.
A. 559, 15 Am. St. Rep. 460. It may regulate the height of buildings
in the city. People v. D'Oench, 111 N. Y. 359, 18 N. E. 862. It
may require the introduction of water in a building. N. Y. Health
Dept. v. Trinity Church, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710.
It may prevent the exhibition of children in theaters. People v. Ewer,
141 N. Y. 129, 36 N. E. 4. It may prevent trade in marked bottles.
People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668.
And because the act interferes with trade, it is not necessarily uncon-
stitutional. Id. The police power extends to legislation having for
its object the promotion of the health, the comfort, the safety, and the
welfare of society. Under it the conduct of an individual in the use
of property may be regulated so as to interfere to some extent with
the freedom of the one and the enjoyment of the other. Matter of
Jacobs, 98 N. Y. 108, 50 Am. Rep. 636. But under the exercise of
the police power, the act must have reference to the comfort, the
safety, or the welfare of society, and it must not conflict with the
Constitution. The law will not allow the rights of property to be
invaded under the guise of protection when it is manifest such is not
the object and purpose of the regulation. "Courts must be able to
say, upon a perusal of the enactment, that there is some fair, just, and
reasonable connection between it and the objects above mentioned.
Unless such relation exists, the enactment cannot be upheld as an
exercise of the police power." People v. Gillson, 109 N. Y. 403, 17
N. E. 343, 4 Am. St. Rep. 465. In the present case the statute re-
lates to rights of owners of real estate in certain designated parts of
the state. It is a statute for the protection of such owners, to pre-
vent unwarranted interference with their property, their subjection to
annoyance and to fraudulent claims, and the expense of resisting such
claims, and to prevent the unauthorized assumption of agency by
real estate brokers, and to provide for evidence of employment of
such a. character as will prevent false swearing. While these purposes
are not recited in the act, it is apparent that they will be accomplished
by it; and if it is competent for the Legislature to make the act op-
erative in one part of the state, and not in another, there is an obvious
public benefit to be derived from it. It does not interfere with the
transaction of a lawful pursuit, except in so far as requiring evidence
of a certain character can be said to interfere; but that does not con-
stitute an invasion of liberty, any more than the requirements of law

that contracts of a certain character shall not be enforced unless they are in writing, or that auctioneers and others must keep records of a certain kind in the transaction of their business. The act in no way infringes any right of property, nor does it affect real estate brokers in the way in which ticket brokers were affected by the statute condemned in People ex rel. Tyroler v. The Warden, etc., 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763. There the act merely turned over to transportation companies the selection of agents for the sale of passage tickets. The business of buying and selling tickets continued to be a legitimate one, but to all citizens other than those who might be selected by the transportation companies the right to sell tickets was denied, and actual sale of them constituted a crime. It is admitted in that case that there might be a situation such as would justify the placing of some restriction upon persons engaged in selling passage tickets, and prescribing penalties, by way of fine or imprisonment, for those who should break over such restrictions; and the excise legislation is referred to as an illustration. In that case the railroad ticket brokers were dealing with their own property, which they had bought and paid for. Here there is nothing in the statute which interferes with a real estate broker conducting his business legitimately. He may negotiate contracts for real estate when he is authorized in writing to do so. We agree with what is said by the court in the Grossman Case—that "we are at liberty to consider the established usages, customs, and traditions of the people, and to have in view the promotion of their comfort, and the preservation of the public peace and good order." We discover in this statute that which the learned court in the Grossman Case failed to find—that it is intended to correct the evil, which has time and time again been exemplified in the courts, of the oppressive litigation forced upon real estate owners by reason of unfounded claims made by real estate brokers that they had been employed to negotiate sales of property for such owners. The real estate broker is not as much controlled or trammeled in his business as was the barber in the Havnor Case, who, by exercising his trade in one part of the state on an interdicted day, becomes a criminal, while in another part of the state he may work with impunity on that day.

If, as we apprehend, this statute was within the power of the Legislature to enact, although operating, as it does, unequally in different parts of the state, we can see no reason why obedience to it cannot be compelled by making it a misdemeanor to violate it. If the state had power to issue the command, and those affected by the statute are required to obey, it was within the competency of the Legislature, if it saw fit, to add the sanction of punishment for disobedience. We are of opinion that the act is constitutional, and a reasonable exercise of police power.

The order appealed from must be affirmed, with costs. All concur.