(103 App. Div. 218.)

## WRIGHT v. HART.

(Supreme Court, Appellate Division, First Department.   April 7, 1905.)

1. CONSTITUTIONAL LAW—PRESUMPTIONS—VALIDITY OF STATUTES.
 Every presumption is in favor of the constitutionality of legislative acts, and a statute will not be declared unconstitutional and void unless a clear and substantial conflict exists between it and either the state or federal constitution.

 [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 46.]

2. SAME—REGULATION OF SALES.
 The provision of Laws 1902, p. 1249, c. 528, relative to sales of merchandise in bulk, which declares such sales to be "fraudulent and void" unless specified formalities are complied with, does not of itself render the act unconstitutional.

3. SAME—DUE PROCESS OF LAW.
 Laws 1902, p. 1249, c. 528, declaring sales of an entire stock of merchandise in bulk fraudulent and void as against creditors of the seller unless an inventory is made of the same, and the purchaser inquires of the seller as to the name and residence of the latter's creditors, and gives notice of the proposed sale personally or by registered mail to each of such creditors, of whom he can or should acquire knowledge, is a proper and reasonable measure of regulating extraordinary sales so as to prevent a prevalent form of fraud, and is not in conflict with the constitutional guaranties of due process of law.

4. SAME—EQUAL PROTECTION OF LAWS.
 Nor does the act deny to citizens of the state the equal protection of its laws, in violation of the fourteenth amendment to the federal Constitution.

5. SAME.
 It is not necessary that a statute passed in the exercise of the police power shall apply equally and uniformly to all citizens of the state, but it is sufficient to satisfy the constitutional requirement of equal protection of the laws if it applies equally and uniformly to all citizens similarly circumstanced.

 Ingraham, J., and Van Brunt, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Edmund Wright, as trustee in bankruptcy of W. C. Loftus & Co., against Edward Hart.   From an interlocutory judgment overruling the demurrer to the complaint, defendant appeals. Affirmed.

The plaintiff is the trustee in bankruptcy of W. C. Loftus & Co., and brings this action to set aside a sale of personal property made by the bankrupt corporation to the defendant, upon the ground that such sale is fraudulent and void under the provisions of chapter 528, p. 1249, of the Laws of 1902. That statute reads in part as follows: "A sale of any portion of a stock of merchandise other than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or the sale of an entire stock of merchandise in bulk, shall be fraudulent and void as against the creditors of the seller, unless the seller and purchaser shall at least five days before the sale make a full and detailed inventory showing the quantity, and so far as possible, with the exercise of reasonable diligence, the cost price to the seller of each article to be included in the sale, and unless such purchaser shall at least five days before the sale make full, explicit inquiry of the seller as to the name and place of residence or place of business of each and every creditor of the seller and the amount owing each creditor, and unless the purchaser shall at least five days before the sale in good faith

notify or cause to be notified personally or by registered mail each of the seller's creditors of whom the purchaser has knowledge or can with the exercise of reasonable diligence acquire knowledge, of such proposed sale and of the stated cost price of merchandise to be sold and of the price proposed to be paid therefor by the purchaser. The seller shall at least five days before such sale file a truthful answer in writing of each and all of said inquiries." The complaint contains allegations showing that the sale is one governed by the statute just quoted, and that the vendor and vendee failed and neglected to comply with the statutory requirements. The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, and by this demurrer he attacks the constitutionality of the statute itself, claiming that it deprives him of liberty and property without due process of law, and denies him the equal protection of the laws of this state, in violation both of the state and federal constitutions. N. Y. St. Const. art. 1, §§ 1, 6; Amend. U. S. Const. art. 14, §. 1. The trial court held that the statute was constitutional, and therefore overruled the demurrer, and from the interlocutory judgment entered to that effect the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Louis Marshall, for appellant.
Abraham I. Elkus, for respondent.

O'BRIEN, J. It is conceded that this complaint is demurrable if chapter 528, p. 1249, of the Laws of 1902, is unconstitutional; otherwise, the facts alleged are sufficient to constitute a cause of action, and the demurrer was properly overruled. The constitutionality of the statute, therefore, is the sole question to be determined on this appeal.

In approaching the consideration of this question, we must bear in mind the rules which govern a court in exercising its conceded power to declare unconstitutional in a proper case a statute enacted by the Legislature with due formality. It has been frequently held, and is acknowledged to be the true rule, that a statute will not be declared to be unconstitutional and void unless a clear and substantial conflict exists between it and either the state or federal constitution, and that every presumption is in favor of the constitutionality of legislative acts. The case must therefore be practically free from doubt before the judicial branch of the state government is justified in nullifying the action of the legislative branch by declaring this enactment unconstitutional. People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465.

The Legislature has the unquestioned right to enact suitable and proper laws for the common welfare, and, while the liberty and property of the citizen are sacredly guarded by both state and federal constitutions, nevertheless these rights which he has as an individual may be limited and restricted to a certain extent, when necessary for the maintenance of the public safety, comfort, and welfare. For the benefit of the public the Legislature may enact laws which control the conduct of the individual and the use which he is permitted to make of his property, so as to interfere to some extent with the freedom of the one and the enjoyment of the other. Matter of Jacobs, 98 N. Y. 108, 50 Am. Rep. 636. Statutes which have this effect have repeatedly been held by the courts to be constitutional, when it could

be seen that they were in fact enacted for the benefit of society. Thus the Court of Appeals has affirmed the constitutionality of statutes that limit the height of buildings in New York City (People v. D'Oench, 111 N. Y. 359, 18 N. E. 862), that regulate charges for elevating grain (People v. Budd, 117 N. Y. 1, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460), that require the introduction of water in buildings (Health Department v. Rector, 145 N. Y. 32, 39 N. E. 833, 45 Am. St. Rep. 579), that prohibit the exhibition of children in theaters (People v. Ewer, 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788), that prohibit trading in marked bottles (People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668), that prohibit the sale of lottery tickets (People v. Noelke, 94 N. Y. 137, 46 Am. Rep. 128), and that prohibit barbers from engaging in their trade on Sundays anywhere within the state except in New York City and Saratoga Springs (People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707). In so regulating and controlling the conduct of the citizen in respect to himself and his property, the Legislature acts under what is termed its "police power"—that broad comprehensive authority which resides in the lawmaking branch of the state government, and which it is permitted by the Constitution to exercise for the purpose, as already said, of providing for the comfort, the safety, or the welfare of society. Whiteley v. Terry, 83 App. Div. 197, 82 N. Y. Supp. 89. This subject has been ably discussed by Judge Vann in People v. Havnor, supra, where he says:

"The sanction for these apparent trespasses upon these private rights is found in the principle that every man's liberty is to some extent subject to the general welfare, as each person's interest is presumed to be promoted by that which promotes the interest of all. Dependent upon this principle is the great police power, so universally recognized, but so difficult to define, which guards the health, the welfare, and the safety of society. While this power may not be employed ostensibly for the common good, but really for an ulterior purpose, when its object and effect are manifestly in the public interest, as was said in the Jacobs Case, 'it is very broad and comprehensive, and under it the conduct of an individual and the use of property may be regulated so as to interfere to some extent with the freedom of the one and the enjoyment of the other.'"

That the Legislature, in passing the statute now under consideration, assumed to act under its police power and for the public welfare, is apparent both from the title of the act itself and from its provisions. It is designed to prevent fraud in the sale of merchandise. It provides for regulating sales of merchandise either in bulk or out of the ordinary course of business, so that creditors of the vender may not be defrauded. It requires that they be notified of the contemplated sale, in order that they may have an opportunity to protect themselves against such a transfer of the debtor's property as would deprive them of the means of collecting their just debts.

An examination of the legislative enactments of the several states discloses the fact that legislators throughout the country have during recent years deemed it advisable to regulate by statute sales of the character mentioned in the act under consideration, for the purpose of preventing dishonest debtors from fraudulently selling or

disposing of their assets. At least 21 states, besides our own, have passed laws having this object in view, and some of the enactments contain provisions almost identical with those in our own statute. California: Section 3440 of the Civil Code, amendment March 10, 1903. Colorado: Sess. Laws 1903, p. 225, c. 110. Connecticut: Pub. Acts 1903, p. 49, c. 72. Delaware: Laws 1903, p. 748, c. 387. District of Columbia: 33 Stat. 555, c. 1809; Acts 58th Cong. April 28, 1904. Georgia: Laws 1903, p. 92. Idaho: Sess. Laws 1903, p. 11. Indiana: Acts 1903, p. 276, c. 153. Kentucky: Acts 1904, p. 72, c. 22. Louisiana: Acts 1896, p. 137, No. 94. Maryland: Laws 1900, p. 907, c. 579. Massachusetts: Acts and Resolves 1903, p. 389, c. 415. Minnesota: Gen. Laws 1899, p. 357, c. 291. Ohio: Laws 1902, p. 96. Oklahoma: Sess. Laws 1903, p. 249, c. 30. Oregon: B. & C. Comp. c. 7, § 4623. Tennessee: Acts 1901, p. 234, c. 133. Utah: Laws 1901, p. 67, c. 67. Virginia: Act Jan. 2, 1904 (Acts 1902–04, p. 884, c. 554). Washington: Laws 1901, p. 222, c. 109. Wisconsin: Laws 1901, p. 684, c. 463.

The number of states now having statutes bearing on this subject is evidence that the evil sought to be remedied is widespread, and that the object desired to be effected, namely, the prevention of fraud and injustice, has strongly appealed to legislators, in whom is vested the power of enacting laws for the public good. We assume that no one will question the fact that the end sought by these enactments is right, just, and commendable. Therefore, in considering the constitutional question presented to us, we are only called upon to determine whether, in the means adopted to accomplish this end, the Legislature of our state has violated any of the constitutional safeguards which the people have established for the protection of their property rights. The statute does not interfere with any transactions which take place in the ordinary course of business; it only regulates sales that are made in an unusual and extraordinary manner. It does not even forbid or restrict such sales. It simply regulates them by providing that certain formalities must be complied with by the vender and vendee, otherwise the sale will be void as against creditors. If the vender pays his debts, then, even though he does not comply with the provisions of the statute, the sale is good as against all the world. It is only when he fails to pay his just debts that he or the purchaser need fear an attack upon the transaction.

The constitutionality of this statute has not heretofore been passed upon by an Appellate Court of our state, but in Massachusetts a statute containing almost identical provisions has been held to be constitutional (J. P. Squire & Co. v. Tellier, 185 Mass. 18, 69 N. E. 312), and the Supreme Court of the state of Washington has reached the same conclusion in considering a statute upon this subject which contains requirements even more stringent than our own (McDaniels v. J. J. Connelly Shoe Co., 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889). In the able opinion in the latter case it was said:

"The act, it is true, does prohibit owners of certain kinds of property from disposing of it in a particular way without complying with certain condi-

tions, but it is not for that reason necessarily unconstitutional. While the Legislature may not constitutionally declare that void which in its nature is, and under all circumstances must be, entirely honest and harmless, yet it may, under its police powers, place such reasonable restrictions on the right of an owner in relation to his property as it finds necessary to protect the interests of the public or prevent frauds among individuals. If this were not so, it would be easy to find many unconstitutional acts on the statute books. Statutes familiar to every person, such as those regulating the manner of conveying real property, regulating the mortgaging and sale of personal property, requiring certain articles of food made in imitation of other well-known articles to be branded with their true names, regulating the sales of poisons, and the like, are statutes restricting the rights of an owner in relation to his property; yet such statutes, in so far as they tend reasonably to prevent injury to the public and fraud among individuals, are uniformly held constitutional."

The same decision has been reached by the highest courts of Connecticut (Walp v. Mooar, 76 Conn. 515, 57 Atl. 277) and Tennessee (Neas v. Borches, 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851) in sustaining the statutes of their respective states which declared the sales to be void unless the parties complied with the specified formalities, and the courts of Wisconsin (Fisher v. Herrmann, 118 Wis. 424, 95 N. W. 392) and Maryland (Hart v. Roney, 93 Md. 432, 49 Atl. 661) have sustained the constitutionality of statutes which declared that such sales were presumptively fraudulent unless the required formalities were observed.

It must be noted, however, that decisions have not uniformly held similar legislation to be constitutional. In Ohio (Miller v. Crawford, 70 Ohio St. 207, 71 N. E. 631) the court held that a statute of the same general tenor as our own, but which in our opinion contained more stringent provisions, violated the Constitution because it placed an unwarrantable restriction upon the right of an individual to acquire and possess property, and because it contained a forbidden discrimination in favor of a limited class of creditors. A similar statute was also declared unconstitutional by the Supreme Court of Utah. Block v. Schwartz, 76 Pac. 22, 65 L. R. A. 308.

We are thus confronted with a conflict of authority as to the constitutionality of this class of legislation, but a careful examination of all the cases in which similar statutes have been considered fails to convince us that any provision of the act in question violated either the state or federal constitution. It is legislation of the same general character as that which requires that conditional sales shall be in writing and recorded, and that chattel mortgages shall be filed. The fact that it declares certain sales to be fraudulent and void unless the specified formalities are complied with does not of itself make the enactment unconstitutional. The statute relating to chattel mortgages (Lien Law, § 95 [Laws 1897, p. 538, c. 418]) provides that such mortgages shall be invalid as against creditors of the mortgagor, and also against subsequent purchasers or mortgagees in good faith, unless the provisions requiring the refiling of the mortgage or a statement each year are complied with. The penalty for a failure to comply with these requirements of the lien law is equally as severe as that which this statute imposes. In both cases the transaction is declared invalid or void as against creditors,

yet the constitutionality of the provision of the lien law cannot be seriously questioned. In this connection it may be proper to call attention to the fact that the statute as it stood when this sale was made has since been amended (chapter 569, p. 1385, Laws 1904), and that the law at present declares, not that the sale is fraudulent and void, but that it "will be presumed to be fraudulent and void." The precise question, therefore, now before us for consideration, will not arise in the future.

The purpose of the statute, as already stated, is to prevent fraud in the sale of merchandise. That it will tend to prevent the particular fraud aimed at does not permit of doubt. The court can see from a perusal of its terms that there is a fair, just, and reasonable connection between it and the object for which it was enacted, to wit, the general welfare of society. Whiteley v. Terry, supra; People v. Gillson, supra. Nor are its provisions unreasonable. It requires that an inventory shall be made of the goods to be sold, which shall show, "so far as possible, with the exercise of reasonable diligence, the cost price to the seller of each article." It requires the purchaser to give at least five days' notice of the sale, either personally or by registered mail, to each of the vender's creditors of whom he has knowledge, and he must exercise reasonable diligence, and in good faith make inquiries of the seller, in order that he may ascertain the names of such creditors, the amounts due them, and their respective places of residence or business; and the seller is bound to make and file a truthful answer to such inquiries. All these things can be done without hardship or undue effort on the part of either the vender or the vendee. The statute only requires the exercise of good faith and reasonable diligence, and it is, in our opinion, a proper measure for regulating extraordinary sales and sales in bulk, so as to prevent a method of fraud which has become prevalent and widespread. If the vender pays his debts, as already said, neither he nor the vendee need fear the statute. If, on the other hand, the vender is unable or unwilling to pay his debts, then the statute puts a substantial obstacle in his way when he wants to dispose of his stock of merchandise in bulk or in an unusual manner, in order that he may himself receive the payment, to the exclusion of his creditors. It is therefore a salutary enactment promoting the general welfare, and not in conflict with the constitutional provisions which prescribe that the citizen shall not be deprived of his liberty or property without due process of law.

Nor does the statute deny to citizens in this state the equal protection of its laws, in violation of the fourteenth amendment to the federal Constitution. It is not necessary that a statute passed in the exercise of the police power should apply equally and uniformly to all citizens of the state in order that it may be constitutional. It is sufficient if it applies equally and uniformly, as this one does, to all citizens who are similarly circumstanced. By this statute all persons in like circumstances and conditions are treated alike, both as to privileges conferred and liabilities imposed. Therefore it is not a prohibited enactment. People v. Havnor, supra; J. P. Squire

& Co. v. Tellier, supra; McDaniels v. J. J. Connelly Shoe Co., supra; Commonwealth v. Danziger, 176 Mass. 290, 57 N. E. 461; Missouri v. Lewis, 101 U. S. 22–30, 25 L. Ed. 989; Barbier v. Connolly, 113 U. S. 27–31, 5 Sup. Ct. 357, 28 L. Ed. 923; Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578.

For these reasons, we are of the opinion that the statute is constitutional, and it follows that the complaint states a cause of action, and the demurrer thereto was properly overruled. The judgment appealed from must therefore be affirmed, with costs, with leave to defendant to withdraw demurrer, and to answer upon payment of costs in this court and in the court below.

HATCH and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). The question presented upon this appeal is as to the validity of chapter 528, p. 1249, of the Laws of 1902, as it is conceded that the demurrer can only be sustained if that statute violates either the Constitution of the United States or the Constitution of this state. This act declares fraudulent and void as against the creditors of the vender the sale of an entire stock of merchandise, or any portion of a stock of merchandise, unless its provisions are complied with. The condition upon which the owner of a stock of merchandise may sell either the whole or a part thereof is that the seller and purchaser shall, five days before the sale, make a full and detailed inventory showing the quantity, and, so far as possible with the exercise of reasonable diligence, the cost price to the seller, of each article to be included in the sale; and that the purchaser shall, at least five days before the sale, in good faith make a full, explicit inquiry of the seller as to the name and place of residence or place of business of each and every creditor of the seller, and the amount owing each creditor; that the purchaser shall, at least five days before the sale, in good faith notify or cause to be notified, personally or by registered mail, each of the seller's creditors of whom the purchaser has knowledge, or can with the exercise of reasonable diligence acquire knowledge, of such proposed sale, and of the stated cost price of merchandise to be sold, and the price proposed to be paid therefor by the purchaser; and that the seller, five days before such sale, file (where, is not stated) a truthful answer in writing of each and all of said inquiries. Thus the power to dispose of a stock of merchandise, or any portion thereof, does not alone depend upon the good faith of the vender, but also upon the good faith of the vendee. The vender may comply with the statute in all respects, he may act in entire good faith, but the sale is still fraudulent and void unless the vendee also complies with the statute on his part, and no method is provided by which a vender may compel the vendee to comply with the statute, or by which the vendee can compel the vender to comply with it. A man who, before the passage of this act, was the owner of a stock of merchandise, with power to sell it as he pleased, the day after its passage was prohibited from selling it except upon conditions which the owner could not control. A notice to the creditors

given by the seller would not comply with the statute. This statute does not, as in the case of chattel mortgages and conditional sales, provide that the mortgage or the contract for such a sale must be in writing. and notice thereof given by a record of the contract, which could be complied with by either the mortgagor or mortgagee or vender or vendee, but declares the sale fraudulent and void if. one of the parties does not act in good faith, although the other party may have been entirely innocent, and may have honestly supposed that the statute had been complied with. This statute is sought to be upheld, as is usual when statutes of this kind are questioned, under the broad power that has been reserved to the states, known as the "police power"; but we are reminded by many cases that there is a limit to this police power, and the courts have constantly held that attempts under the police power to restrict the rights of individuals, or to interfere with the personal liberty, are void when beyond a fair and reasonable connection with it, and to attain the ends which are recognized as within it. As was said in Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385:

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual or unnecessary restrictions upon lawful occupations."

Section 6 of article 1 of the Constitution of the state of New York provides that no person shall be deprived "of life, liberty or property without due process of law"; and the courts of this state have universally given to this provision a large and liberal interpretation, and have held that the fundamental principle of free government, expressed in these words, protects not only life, liberty, and property, in a strict and technical sense, against unlawful invasion by the government, but also protects every essential incident to the enjoyment of those rights. People v. King, 110 N. Y. 418, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389, and cases cited. It cannot be fairly disputed, I think, that this statute seriously affects the power of disposition of property by its owner, for the validity of every sale of property embraced within its provisions, as before stated, depends, not upon the good faith of the vender in complying with the provisions of the statute, but also upon the good faith of the vendee in the performance of the conditions for a valid sale of the property which the statute imposes. We are to determine this question in view of the provisions of the Constitution of this state, construed, as they have been, by the courts of this state. We may concede that the Legislature would have the power to require a contract for the sale of goods to be in writing, and that the contract be filed in a public office, or evidence of the terms and conditions of the sale preserved; but when the Legislature goes further and makes the validity of the sale depend, not upon the good faith of the vender, but also upon the good faith of the vendee, I cannot avoid the conviction that restrictions upon the sale of the vender's

property have been imposed beyond a fair and reasonable regulation required for the health, safety, and welfare of the public. This conclusion seems to be within the principle established in People ex rel. Tyroler v. Warden of Prison, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763. The statute under consideration in that case provided that no person should issue or sell, or offer to sell, any passage ticket or instrument giving or purporting to give any right to a passage or conveyance upon any vessel or railroad train, unless he was an authorized agent, owner, or consignee of such vessel, or of the company running such train; and it was held that that act was a violation of this provision of the Constitution now under consideration. The claim was made in that case that the public and the transportation companies had been defrauded by the acts of brokers in selling railroad tickets; but the court in answer said:

"It is novel legislation indeed that attempts to take away from all the people the right to conduct a given business because there are wrongdoers in it for whose conduct people suffer. * * * If the act prohibited is fraudulent, there can be no doubt that the Legislature under its police power may provide for its punishment. * * * Nor can the contention be tolerated that because there have been in times past dishonest persons engaged in the ticket brokerage business, with the result that frauds have been perpetrated on both travelers and transportation companies, therefore the Legislature can deprive every citizen engaged therein of the 'liberty' to further conduct such business. Stringent rules undoubtedly may be enacted to punish those who are guilty of dishonest practices in the conduct of such a business, and the machinery of the law put in motion for its rigorous enforcement; but to cut up, root and branch, a business that may be honestly conducted to the convenience of the public and the profit of the person engaged in it, is beyond legislative power. If the law were otherwise, no trade, business, or profession could escape destruction at the hands of the Legislature if a situation should arise that would stimulate it to exercise its power, for in every field of endeavor can be found men that seek profit by fraudulent processes. Transportation tickets have been forged, it is said; so have notes, checks, and bank bills. Railroad companies are no more bound to honor forged tickets than the alleged maker of a forged note is bound to pay it. An innocent person who suffers by parting with his money on a forged ticket has his remedy against the vender, just the same as has the bank that discounts a forged note. Such instances might be multiplied, but it would serve no good purpose, for it is well known that no business can be suggested through which innocent parties may not be occasionally victimized. But because of that fact, honest men cannot be prevented from engaging in their chosen occupations."

And it may be added that honest men cannot be prevented from selling their property. That the free and unrestricted right of the owner of a stock of merchandise to use or sell it is an essential attribute of the ownership of the property cannot be disputed. Judge Comstock, In Wynehamer v. The People, 13 N. Y. 378, says:

"When a law annihilates the value of property, and strips it of its attributes, by which alone it is distinguished as property, the owner is deprived of it according to the plainest interpretation, and certainly within the spirit of a constitutional provision intended expressly to shield private rights from the exercise of arbitrary power."

And in People ex rel. v. Otis, 90 N. Y. 48, Judge Andrews says:

"Depriving an owner of property of one of its essential attributes is depriving him of his property within the constitutional provisions."

And these expressions are quoted by Judge Earl with approval in Matter of Application of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636, where he says:

"And hence any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property."

See, also, People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543. If we assume, therefore, that the free and unrestricted right to sell property is one of its attributes, protected by the provisions of the Constitution, then certainly the statute which imposes, as a condition of the right of the owner to make a valid sale of his property, an act in good faith of another person, takes away one of its essential attributes and deprives the owner of his property, and for this reason I think the statute violates the constitutional provision and is void. We are referred to cases in other states which have upheld a statute similar to that in question. The Supreme Court of Massachusetts in Squire v. Tellier, 185 Mass. 18, 69 N. E. 312, upheld the statute as passed under the authority of a provision in the Constitution of that state which vests in the Legislature broad power which is not in the Constitution of this state. The cases also from other states have been considered. In some cases where the statute has been upheld it is substantially different from the statute in question, and in other cases the constitutional provision differs from the Constitution of this state, construed, as it has been, by the courts of this state; but entertaining the views before expressed as to the effect of this law, it seems to me that it cannot be sustained.

I think, therefore, that the judgment should be reversed, and the demurrer sustained.

VAN BRUNT, P. J., concurs.