FRANK L. FISHER COMPANY, Appellant, *v.* ROBERT L. WOODS, Respondent.

1. APPEAL — WHEN CERTIFICATION NOT REQUIRED UPON APPEAL FROM UNANIMOUS DECISION — CODE CIV. PRO. §.191, SUBD. 2. Under the statute (Code Civ. Pro. § 191, subd. 2), an action brought to recover for services rendered is appealable to the Court of Appeals from a unanimous affirmance of a judgment by the Appellate Division, with the permission of the latter court without any question of law being certified.

2. SAME — EXCEPTIONS TO CONCLUSIONS OF LAW. A contention that the appellant in such action has no standing in the Court of Appeals to review such judgment, for the reasons that the exceptions taken by the appellant are to the conclusions of law which were proposed by itself and found by the trial court in conformity with the appellant's own requests, is untenable where the record fails to show that the conclusions of law were proposed by the appellant or that the trial court found in conformity with its requests.

3. PENAL CODE, SECTION 640D — UNCONSTITUTIONAL UNDER FEDERAL AND STATE CONSTITUTIONS (U. S. CONST. ART. 1, § 10 AND 14TH AMENDMENT; N. Y. STATE CONST. ART. 1, §§ 1 AND 6). Section 640d of the Penal Code (L. 1901, ch. 128), which provides that "in cities of the first and second class, any person who shall offer for sale any real property

without the written authority of the owner of such property,  *  *  *
shall be guilty of a misdemeanor," is an improper and unreasonable exer-
cise of the police powers of the state, vested in the legislature, and vio-
lative of the Federal and State Constitutions (U. S. Const. art. 1, § 10, and
14th amendment; N. Y. State Const. art. 1, §§ 1 and 6), in that it is an
arbitrary infringement upon the liberty and rights of *all* persons who
engage in selling real estate for others, with or without compensation, by
making the person employed and· acting without written authority
guilty of a misdemeanor and punishable as a criminal.

    *F. L. Fisher Co.* v. *Woods*, 110 App. Div. 890, reversed.

(Argued November 28, 1906; decided January 8, 1907.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the first judicial department, entered
December 22, 1905, affirming a judgment in favor of defend-
ant entered upon a dismissal of the complaint by the court at
a Trial Term without a jury.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*J. Harry Hull* for appellant.  Section 640d of the Penal
Code as enacted by chapter 128 of the Laws of 1901 is not a
proper exercise of the police power of the state.  (*Lochner* v.
*New York*, 198 U. S. 45 ; *Lawton* v. *Steele*, 152 U. S. 133 ;
*Matter of Jacobs*, 98 N. Y. 98 ; *People ex rel. Tyroler* v.
*Warden*, 157 N. Y. 130.)  Section 640d of the Penal Code is
in violation of the State and Federal Constitutions in that it
is an unwarrantable interference with the liberty of the citi-
zen, and it deprives the citizen of his property without due
process of law.  (*Crossman* v. *Caminez*, 79 App. Div. 15 ;
*Cody* v. *Dempsey*, 86 App. Div. 335 ; *Alleyer* v. *Louisiana*,
165 U. S. 578 ; *B. U. Co.* v. *Crescent City Co.*, 111 U. S.
757 ; *Barbier* v. *Connolly*, 113 U. S. 27 ; *Lochner* v. *New
York*, 198 U. S. 45 ; *Schnair* v. *N. H. & I. Co.*, 182 N. Y.
8.)  Section 640d of the Penal Code is in violation of the 14th
amendment of the United States Constitution in that it denies
to citizens the equal protection of the laws.  (*Barbier* v. *Con-
nolly*, 113 U. S. 27 ; *B. U. Co.* v. *C. City Co.*, 111 U. S. 746 ;
U. S. R. S. § 1977.)

*John T. Sackett* and *Richard M. Bruno* for respondent. The only question asked by the plaintiff, appellant, to be certified to the Court of Appeals on its motion for that purpose was the constitutionality of chapter 128 of the Laws of 1901; but the only question certified by the order of the Appellate Division is described to be "a question of law" merely. The question to be decided is not formulated. Nothing is certified and nothing can be reviewed. (*C. Bank* v. *Sherwood,* 162 N. Y. 310; *Devlin* v. *Hinman,* 161 N. Y. 115.) Chapter 128, Laws of 1901, is a valid exercise of the police power of the State, and is in no respect unconstitutional. (*People ex rel. Armstrong* v. *Warden,* 183 N. Y. 225; *People* v. *Havnor,* 149 N. Y. 195; *People* v. *Stedeker,* 75 App. Div. 449; *Whiteley* v. *Terry,* 83 App. Div. 197; *Williams* v. *People,* 24 N. Y. 405; *Matter of Bayard,* 25 Hun, 546; *Mallett* v. *North Carolina,* 181 U. S. 589; *People* v. *Lochner,* 177 N. Y. 145; 198 U. S. 45; *People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 529; *Bohmer* v. *Haffen,* 161 N. Y. 390.)

HAIGHT, J. This action was brought by the plaintiff, a corporation engaged in the business of real estate brokerage, to recover compensation for services which it claims it had rendered the defendant with reference to the sale or exchange of certain real property in the city of New York.

The trial court has found as facts that on or about the first day of July, 1904, the defendant entered into an oral agreement with the plaintiff by which it was to sell or exchange for defendant certain real property specifically described, and that the plaintiff, pursuant to such agreement, procured a customer therefor, who was willing to take the property upon the terms agreed upon, and that its services were of the fair and reasonable value of fifteen hundred dollars; but, as conclusions of law, the court found that the plaintiff had no cause of action, for the reason that it had no written authority to sell, or offer for sale, the property, pursuant to the provisions of chapter 128 of the Laws of 1901, known as section

640d of the Penal Code. Judgment was, therefore, entered in favor of the defendant, dismissing the plaintiff's complaint, with costs.

The contention is now made that the plaintiff has no standing in this court to review the judgment, for the reason that the exceptions taken by the plaintiff are to the conclusions of law which were proposed by itself and found by the trial court in conformity with plaintiff's own requests, and that the appeal was taken pursuant to section 190 of the Code of Civil Procedure and that the Appellate Division in giving leave to appeal to this court did not certify any question to be reviewed. In answer to this contention our examination of the record fails to show that the conclusions of law were proposed by the plaintiff, or that the trial court found in conformity with its requests. If the plaintiff did prepare the findings and conclusions of law, by the direction of the trial court after the announcement of a decision as to the disposition that should be made of the case, we apprehend the plaintiff would not be estopped from taking exceptions to the conclusions.

The action was to recover compensation for services rendered and is, therefore, brought within the provisions of subdivision two of the second paragraph of section 191 of the Code of Civil Procedure, and, therefore, no questions were required to be certified. (*Young* v. *Fox*, 155 N. Y. 615.)

The only other question which we are called upon to review is whether the statute referred to is violative of the provisions of the Constitution of this state or of the United States. The provisions involved in the discussion are to the effect that no member of this state shall be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers; nor be deprived of life, liberty or property without due process of law; nor shall any state deny to any person within its jurisdiction the equal protection of its laws; or enact any law impairing the obligations of contracts. (Art. 1, §§ 1 and 6 of

the State Constitution; art. 1, § 10, and 14th amendment of the United States Constitution.)

The learned judges of the Appellate Division of the first and second departments have had the provisions of this statute under consideration and have reached different conclusions. Able and exhaustive opinions have been written by them referring to the authorities which tend to support their respective positions and there is but little that we can add to the discussion, farther than to choose between them the conclusion which we deem to be the wisest and the best supported by the authorities. (*Grossman* v. *Caminez*, 79 App. Div. 15; *Whiteley* v. *Terry*, 83 App. Div. 197; *Cody* v. *Dempsey*, 86 App. Div. 335.)

The constitutionality of this act depends upon the question whether it was a valid exercise, on the part of the legislature, of the police powers of the state. The rules which should control us in the determination of this question appear to be well established by the authorities. The power must be exercised subject to the provisions of both the Federal and State Constitutions, and the laws passed in the exercise of such power must tend, in a degree that is perceptible and clear, toward the preservation of the public safety or the lives, health and morals of our inhabitants or the welfare of the community. But the legislature cannot arbitrarily infringe upon the liberty or property rights of any person living under the Constitution nor prevent him from adopting and following any lawful profession, trade or industrial pursuit not injurious to the community that he may see fit; nor prevent him from making contracts with reference thereto. To justify the state in interposing its authority in behalf of the public, it must appear that the interest of the public generally, as distinguished from those of a particular class, require such interference and that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business or impose unusual and unnecessary restrictions

upon lawful occupations. The legislative determination as to what is a proper exercise of the police power, is subject to the supervision of the court and in determining the validity of an act it is its duty to consider not only what has been done under the law in a particular instance, but what may be done under and by virtue of its authority. Liberty, in its broad sense, means the right not only of freedom from servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways; to live and work where he will, to earn his livelihood in any lawful calling and to pursue any lawful trade or avocation. (*Health Department* v. *Rector, etc.*, 145 N. Y. 32 ; *People* v. *Gillson*, 109 N. Y. 389 ; *Colon* v. *Lisk*, 153 N. Y. 188 ; *Lawton* v. *Steele*, 152 U. S. 133 ; *People ex rel. Tyroler* v. *Warden of City Prison*, 157 N. Y. 116 ; *Stuart* v. *Palmer*, 74 N. Y. 183 ; *Gilman* v. *Tucker*, 128 N. Y. 190, 200, and authorities in each case cited.)

We are thus brought to the consideration of the validity of the act and its construction under the rules referred to. It is as follows: " In cities of the first and second class, any person who shall offer for sale any real property without the written authority of the owner of such property, or of his attorney in fact, appointed in writing, or of a person who has made a written contract for the purchase of such property with the owner thereof, shall be guilty of a misdemeanor." It will be observed that its provisions not only include real estate agents and brokers, but *any person* who shall offer for sale real property without written authority, and that it makes no distinction between persons who are working for pay and those who are rendering their services gratuitously without any thought or expectation of compensation. Hence, it follows that if a person, who has been orally requested by his neighbor to offer his real estate for sale for a sum stated, should go to another person and offer the same for sale he would become a criminal under the provisions of this statute even though he rendered the services gratuitously without thought, wish or expectation of compensation.

The business of a real estate agent or broker or of any

person who engages his services to an owner of real estate to hunt up and procure a purchaser, through advertisements or otherwise, is perfectly lawful and legitimate, and persons engaged in that business are entitled to as full a protection of their rights under the Constitution as that of any other person engaged in any of the other professions, trades or occupations. It may be that there are dishonest persons engaged in the business of real estate agents, but it is equally true that dishonest persons are found in every occupation. The act in question does not purport, nor is it intended, to protect the purchaser of real property. Usually he is introduced to and concludes his purchase with the owner, but should he rely upon the false representations of the agent with reference to his authority and conclude his contract with such agent, parting with value therefor, it would be larceny, and the agent would become liable to be punished. The only object and purpose apparent is to shield the landowner from being compelled to pay for services rendered, unless the person rendering the services can show written authority therefor. In the real estate business the owner has a shield from unjust claims, that does not exist with reference to many other professions, trades or occupations. The agent is not entitled to his commissions until he brings to the owner a purchaser and their minds meet upon the terms. The owner can, therefore, always refuse to receive or enter upon negotiations with a person introduced by a real estate broker who has not been authorized by him. If, therefore, the legislature, in the exercise of its police powers, may, by this act, lawfully make it a misdemeanor for a person to render services to an owner in procuring a purchaser without his written authority, it may also provide that a lawyer should be guilty of a misdemeanor for drawing a contract for a client, or for rendering him any other service, without having authority therefor in writing. It would also be competent to place like restrictions upon every employee in every trade and occupation. It is difficult to see how there could be any limitation to the power of the legislature in this direction. To

our minds this is going too far.  It is an arbitrary infringement upon the liberty and rights of all persons who choose to engage in such occupation.  Had the act been for the purpose of regulating the business of brokerage, or a statute of frauds, a different question would have been presented, but it is neither.  It relates, as we have seen, to any and every person, and instead of making the oral contract void, it makes the person employed guilty of a misdemeanor and punishable as a criminal.  Undoubtedly, the power of the legislature, to enact what shall amount to a crime, is exceedingly large, but as was said by PECKHAM, J., in *People* v. *Gillson* (*supra*): " That there is a limit even to that power under our Constitution we entertain no doubt, and we think that limit has been reached and passed in the act under review."  So, we conclude with reference to this act.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, VANN and WILLARD BARTLETT, JJ., concur; CHASE, J., not sitting.

Judgment reversed, etc.