## INVALIDITY OF THE SALES-BY-WEIGHT STATUTE.

Common Pleas Court of Franklin County.

IN THE MATTER OF THE PETITION OF HENRY H. STEUBE, FOR WRIT OF HABEAS CORPUS.*

Decided, 1913.

*Constitutional Law—Act Requiring that Certain Articles be Sold by Weight or Numeral Count—Held to be an Unreasonable Exercise of Police Power.*

Section 6418-1 as amended, providing that "all articles hereinafter mentioned, when sold, shall be sold by avoirdupois weight or numeral count unless by agreement in writing of the contracting parties, is an arbitrary infringement upon the liberty and property rights of citizens, including the right to contract; and furthermore by its adoption there has been put into effect a prohibitive criminal statute which is not reasonably necessary for the accomplishment of the purpose aimed at and is unduly oppressive upon individuals engaged in such commercial transactions.

*Williams, Williams, Taylor & Nash,* for petitioner.

ROGERS, J.

Petitioner was arrested for violation of Section 6418-1, General Code, as amended March 29th, 1913 (Vol. 103 O. L., 136), relative to sales of specified articles, commonly known as the "sales-by-weight" statute. The substance of the charge in the affidavit, pursuant to which the arrest was made, is that petitioner sold about one-fourth peck of Irish potatoes other than by avoirdupois weight or numerical count to the affiant, and that the sale was not by agreement in writing. Upon the arrest of petitioner a writ of *habeas corpus* was allowed, and the only question now involved is as to the constitutionalty of the act above mentioned under which the arrest was made. If the

---

*Affirmed by the Court of Appeals, *In re Stuebe,* 20 C.C.(N.S.),—; judgment of Court of Appeals affirmed by Supreme Court December 1, 1914; to be reported.

statute is constitutional, the prisoner should be remanded to the custody of the arresting officer; but if not, the prisoner is entitled to his discharge from custody.

The statute under consideration declares that ''all articles hereinafter mentioned, when sold, shall be sold by avoirdupois weight or numerical count, unless by agreement in writing of all contracting parties.'' Here follows a list of the articles, principally, if not entirely of human food, among which are Irish potatoes, and then the statute provides as follows: ''Whoever sells or offers for sale any article in this section enumerated, in any other manner than herein specified, shall be deemed guilty of a misdemeanor,'' etc.

Petitioner's counsel contend that the act is violative of both federal and state constitutions; the former relative to the power conferred upon Congress to ''fix the standards of weights and measures'' (Section 8, Article I, U. S. Const.) and relative to ''due process'' (Section 1, Article XIV, U. S., Const.); and the latter relative to the inalienable rights guaranteed to the people (Section 1, Article I, Const. of Ohio) of enjoying liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety; and there may be coupled with these guaranties, the inviolability of private property guaranteed by Section 19 of the same article. I shall not attempt to discuss the effect of the Federal Constitution on the act in question except as it may be referred to incidentally, but shall consider the act with reference only to the State Constitution and the conflict of the act, with the Bill of Rights.

Under the State Constitution, and especially the guaranties secured by the Bill of Rights, the right to acquire, hold and dispose of property is in effect declared to be inherent in the individual and inalienable. The right so guaranteed of necessity includes the right of contract concerning such property, and this right of contract is a property right, as much so in the enjoyment of property, as the right of acquisition, possession or protection. For property is of little or no value, if it may not be dealt with as an article of commerce and trade among individuals, and such dealings are based upon contract of some form.

The main contention, however, on the part of counsel for the state is that the state has the power to regulate by legislation the disposition of property in certain cases by virtue of its police power, and that the act in question is valid as a police regulation, and not in conflict with the guaranties secured by the Bill of Rights. The question, therefore, is, whether the act in question is a valid exercise on the part of the General Assembly of the police power of the state, and not violative of the Bill of Rights.

It is fundamental that the police power of the state is as much limited by the inhibitions of the Constitution as any other power which the state through its Legislature may attempt to exercise. In other words, the state can not justify its act under a police power and thereby override the Constitution.

Relative to what is police power, or the exercise of a police regulation, it is fundamental that laws passed in the exercise of such power must tend in a degree that is perceptible and clear towards the preservation of the public safety or the lives, health or morals of the inhabitants, or the welfare of the community. To justify interference on the part of the state in restraint of the inalienable rights guaranteed by the first section of the Bill of Rights, the General Assembly can exercise its police power in restraint of those rights only so far as such restraint is for the common welfare and equal protection and benefit of the people, "and such restraining statute must be of such a character that a court may see that it is for such general welfare, protection and benefit. The judgment of the General Assembly in such cases is not conclusive." The state can not by legislative enactment arbitrarily infringe upon the liberty or property rights of its citizens, including the right of contract, so as to prevent them from making contracts in reference to any lawful pursuit or calling, unless, first, the interests of the public generally, as distinguished from those of a particular class, require such interference; and unless, second, the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals, even though the attempt to do so be under the guise of protecting the public in the exercise of police power.

See *Palmer* v. *Tingle,* 55 O. S., 423; *People* v. *Gillson,* 109 N. Y., 389; *Foster* v. *Woods,* 187 N. Y., 90, 94; *Lawton* v. *Steele,* 152 U. S., 133, 137; *In re Preston,* 63 O. S., 428, 438. As said by Justice Field in the *Slaughter House Cases,* 16 Wall., p. 87, "Under the pretense of prescribing police regulation, the state can not be permitted to encroach upon any of the just rights of the citizen which the Constitution intended to secure against abridgment." Among these is the right of the citizen to engage in any lawful business, and any arbitrary or unreasonable invasion of this right by the state, pursuant to its police power is void as an infringement upon the inalienable rights of the citizen guaranteed by the Constitution. "The Constitution gives inviolability to the right to make contracts," and the Legislature may deny the right only when it is required for the general welfare, and when it is promotive of public health or morals." See *In re Preston, supra.*

Adverting to the statute in question, it can not be successfully maintained that this legislation does not seriously infringe upon the right of the dealer in food products to pursue a lawful calling in a proper manner; and that it does not in a marked degree deprive him of his property by curtailing his power of sale and purchase. The food stuffs mentioned in the act, unless contracts in writing are entered into for their disposition, must be sold by weight or numerical count. The right to sell in bulk, or upon estimate of quantity, or by measure, or in any other mode, unless in writing, is prohibited. Can this be done under the guise of police power for the common welfare? I think not, unless this infringement and deprivation are reasonably necessary for the common welfare, or may be said fairly to tend to that result. While it is for the Legislature to determine what laws are needed to protect the public, it is equally true that such laws must fairly tend to that end and not invade the private rights of the individual. The virtual effect of the act is to deprive the buyer and seller of the right to contract for the articles specified in the act otherwise than by weighing or counting them. This in my judgment is an unwarranted exercise of the police power. The right to contract is a property right. The sale of food stuffs is a lawful

pursuit, and there is no public interest subserved by requiring sales of food stuffs otherwise than by weight or numerical count to be in writing. The act is not a statute of frauds, for it in no wise protects or restrains fraudulent sales or purchases. Such is not its object or effect. The contract in writing prescribed by the act for the sale of the articles enumerated, if sold by measure, will neither have any operative effect to prevent any fraud upon the public, or any class or portion of the public, nor afford any means of detection of fraud. The effect of the act is merely to make sales otherwise than by weight or numerical count more difficult for the seller and purchaser to execute. There is no logical connection between the pretended wrong and the attempted remedy.

There is nothing in the business of selling and buying the articles specified in the act to distinguish such business with respect to the mode of sale from any other business transaction involving contracts of sale of articles of commerce and trade not mentioned in the act. And the sole object of thus restricting sales and purchases is to prevent the making of sales in any other manner than by weight or numerical count. While the right of the General Assembly, subject to the paramount authority of Congress, to fix standards of weights and measures and to enforce their use may be conceded, I am of opinion that it has no power to abridge the privileges of sales of specified articles, while it allows to persons in every other transaction with regard to articles of commerce and trade this privilege.

It is said by Shauck, C. J., in *Hamann* v. *Heekin*, 88 O. S., 207, that "our Constitution ordains absolute equality of right and opportunity and all laws must, to be valid, operate equally upon all persons of the same class." This is not so, relative to the statute before us. It allows to persons dealing in every other article of commerce, privileges in the matter of sales and purchases prohibited to persons dealing in the articles of trade mentioned in the act.

Furthermore, the act is an unwarranted invasion of the right of seller and purchaser to make contracts by which the former is obliged to receive, and the latter is obliged to make payment

for the articles enumerated in the act according to weight or numerical count, without regard to any other consideration entering into the transaction. It is difficult to conceive how it conserves the public welfare or is a protection or benefit to the people to require a purchaser who may desire to buy food stuffs enumerated in the act in car load lots or by wagon load, or upon estimates of quantity, or in bulk, to do so by weight or numerical count unless his contract is in writing, so long as his transaction is otherwise lawful. If the state under the guise of a police regulation may make criminal the seller's and purchaser's right to contract concerning one lawful article of commerce, unless his contract is made pursuant to statute, when the safety and welfare of the community are not involved in the transaction, the state may regulate every sort of commercial transaction so as to make property and property rights and their enjoyment of little or no value.

There is no difference in principle between the case before us and *Fisher* v. *Woods*, 187 N. Y., 90, wherein an act to require under penalty all contracts of real estate agents with their principals to be in writing was declared unconstitutional as "an arbitrary infringement upon the liberty and rights of all persons who engage in selling real estate for others, with or without compensation, by making the person employed and acting without written authority guilty of a misdemeanor and punishable as a criminal." The business of selling the articles specified in the act under consideration is perfectly lawful and legitimate, and those who engage in that business are entitled to as full protection of their rights under the Constitution as that of any other person engaged in sales of any other articles of commerce, or in any other trades or occupations. While doubtless there are dishonest persons engaged in sales of the articles enumerated in the act, it is equally true that dishonest persons are found engaged in transactions involving sales of merchandise not mentioned in the act. Carried to its ultimate result, the seller and buyer of every article of merchandise may, by legislative enactment, be prohibited from making sales and purchases except in such mode as may be prescribed by statute, and thus the liberty

of the seller and purchaser to acquire property by contract may be abridged under police power, although the court may not be able to see wherein the restraining statute is for the common welfare, or equal protection and benefit of the people. The interests of the public as distinguished from those of a particular class, do not, as it appears to me, require such interference by legislation with property rights of the seller and purchaser to contract in any lawful manner concerning commodities subject to contract.

Furthermore, the act invades the right of enjoying liberty vouchsafed to the individual by the Constitution, in that it deprives him of the enjoyment of his faculties in pursuing a lawful business, and acquiring property. In *Palmer* v. *Tingle, supra,* it is held that, "The inalienable right of enjoying liberty and acquiring property, guaranteed by the first section of the Bill of Rights of the Constitution, embraces the right to be free in the enjoyment of our faculties, subject only to such restrictions as are necessary for the common welfare." And any oppressive exaction or unreasonable restraint upon the enjoyment of one's faculties is an unwarranted restraint upon our liberty and in contravention of the fundamental law of the land. The term "liberty," as said by Rappallo, J., in *People* v. *Marx,* 99 N. Y., 377, 386, "as protected by the Constitution is not cramped into a mere freedom from physical restraint of the person of the citizen, as by incarceration, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by the Creator, subject only to such restraints as are necessary for the common welfare." And further quoting from Earl, J., *In re Jacobs,* 98 N. Y., 98, he defines liberty as "The right of one person to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation." When the state restrains the enjoyment of one's faculties in pursuit of any important industry—the buying and selling of articles named in the act—by prohibiting the tradesman under penalty from pursuing his calling in only a specific mode, the inalienable right of enjoying liberty and acquiring

property, according to the foregoing definitions, is invaded.  The state has, by this enactment, arbitrarily infringed upon the liberty and property rights of its citizens, including their right to contract, in that it has adopted means by a prohibitive criminal statute which are not reasonably necessary for the accomplishment of the purpose and are unduly oppressive upon the individuals engaged in such commercial transactions.

I shall not attempt to analyze the various cases cited by counsel for the state.  An examination of these cases, however, discloses that the object and effect of the legislation embraced in these cases was to prohibit short weight and measures, and to prevent fraud in that regard.  But such is not the object and effect of the legislation under consideration. · Its effect is to prohibit sales otherwise than specified in the act unless by contract in writing, although the contract in writing in no wise prevents fraud in selling by short measures or otherwise.

I desire to advert to another feature of this case.  By the Federal Constitution (Article I, Section 8, Clause 5), Congress is empowered "to fix the standard of weights and measures."  In a limited way that power has been exercised.  See Joint Resolution of Congress of June 14th, 1836, 5th U. S. Stat. at L., 133, wherein provision was made for transmitting to each state a full set of standards.  Our state, in reconciliation of the resolution, has adopted the standards of weights and measures so fixed.  See Section 6403 et seq., General Code.  The metric system has also been adopted as a standard of weights and measures by Congress.  See 7th Fed. Stat. Ann., 1107-1108.  It is provided in this act that "no contract shall be deemed invalid or liable to objection because the weights or measures expressed or referred to therein are weights or measures of the metric system."  Without going into the question of the conflict, on the one hand, between the United States Constitution and the acts of Congress pursuant thereto relative to weights and measures, and, on the other, the act under consideration, it is clear that the vesting by the United States Statute of authority in Congress to fix the standards of weights and measures, followed by acts of Congress relative thereto, is a recognition by

the Federal Constitution and the acts of Congress, of the right of the people to use weights and measures in all lawful business transactions. The adoption of the constitutional provision and the exercise by Congress of its authority thereunder presuppose the right of the people to transact whatever lawful business may require the use of weights and measures as a means to that end. This right to use weights and measures is as much guaranteed to the people by the United States Constitution as if it were written in the Constitution itself; but the standards to be used are to be fixed by Congress. The right to use weights and measures being impliedly recognized by the United States Constitution, can the state by legislation abridge that right, by declaring in effect that no standard for determining quantity other than by weight or numerical count shall be used, unless the same is in writing? I shall not attempt to answer this question, but prefer to rest my decision wholly upon the grounds heretofore given.

Being of opinion that the act in question is violative of the Constitution of this state, the prisoner is ordered discharged from custody. Exceptions.